*FILED*

*Dec 4  12:39 PM '03*

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JANE DOE | : | CIVIL ACTION NO. |
| **Plaintiff** | : | **302cv1649 (GLG)** |
| | : | |
| V. | : | |
| | : | |
| THE NORWICH ROMAN CATHOLIC | : | |
| DIOCESAN CORPORATION, ET AL. | : | |
| **Defendants** | : | **DECEMBER 3, 2003** |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION TO DISMISS FILED BY THE DEFENDANT, ST. COLUMBA CHURCH

Pursuant to Rule 12 of the Federal Rules of Civil Procedure and Rule 7 of the Local Rules of Civil Procedure, the Plaintiff, Jane Doe, hereby objects to the Defendant, St. Columba Church's Motion to Dismiss dated October 30, 2003 and filed on October 31, 2003.

## I.    BACKGROUND

The Plaintiff, Jane Doe, brings a Second Amended Complaint dated July 31, 2003[1] against the Defendants, The Norwich Roman Catholic Diocesan Corporation (the "Diocese"), St. Columba Church ("St. Columba Church" or the "Defendant"), and Father Patrick J. Sullivan ("Defendant Sullivan") based upon Defendant Sullivan's sexual abuse of the Plaintiff. The Plaintiff alleges that she was a member of the Defendant, St. Columba Church and that

---

[1]    The Plaintiff's July 31, 2003 complaint is actually the Plaintiff's third amendment to the complaint and was erroneously entitled "Second Amended Complaint." The Plaintiff's previous complaint dated February 26, 2003 is also entitled "Second Amended Complaint." All subsequent citations to the "Second Amended Complaint" refer to the July 31, 2003 complaint.

**ORAL ARGUMENT REQUESTED**

Defendant Sullivan was a priest at St. Columba Church. 2d Am. Compl., First Count, ¶ 5-6. The Plaintiff alleges that in or around 1968, when she was fifteen years old, and continuing to approximately 1969, Defendant Sullivan sexually assaulted and abused her in various locations including the St. Columba Church rectory. 2d Am. Compl., First Count, ¶¶ 8-9.  The Plaintiff claims that Defendant Sullivan is liable to her under theories of reckless assault and battery, negligent assault and battery, negligence, intentional or reckless infliction of emotional distress, negligent infliction of emotional distress, and breach of fiduciary duty. 2d Am. Compl., First through Sixth Counts.

The Plaintiff further alleges that Defendant Sullivan was acting within the scope of his employment and in furtherance of the business of the Diocese and the St. Columba Church when he committed the alleged acts against the Plaintiff. 2d Am. Compl., Seventh Count, ¶ 22. As such, the Plaintiff claims that the Diocese and the St. Columba Church are liable under the theory of *respondeat superior*. 2d Am. Compl., Seventh Count. The Plaintiff also alleges that the Diocese and the St. Columba Church are liable to her for their own negligence in hiring, supervising and retaining Defendant Sullivan as an employee, despite the fact that they knew or reasonably should have known that he was unfit. 2d Am. Compl., Eighth Count, ¶ 10. Further, the Plaintiff argues that the Diocese and St. Columba Church are liable to her for negligent infliction of emotional distress. 2d Am. Compl., Ninth Count. Finally, the Plaintiff

2

claims that the Diocese and St. Columba Church are liable under the theory of breach of fiduciary duty. 2d Am. Comp., Tenth Count.

On or about February 28, 2003, St. Columba Church filed a Motion to Dismiss the Plaintiff's previous complaint dated February 26, 2003. The Diocese also filed a Motion to Dismiss this complaint on or about March 3, 2003. This Court granted St. Columba Church's and the Diocese's motions in part, without prejudice for the Plaintiff to replead. Doe v. The Norwich Roman Catholic Diocesan Corp., 268 F. Supp. 2d 139 (D. Conn. 2003). Specifically, this Court ruled as to the Seventh Count that the Plaintiff's allegations, as set forth in her previous complaint, insufficiently alleged that Defendant Sullivan was acting within the scope of his employment. Id. at 143. The Court further ruled as to the Tenth Count that Plaintiff's allegations were insufficient to allege that a fiduciary relationship existed between the Plaintiff and the Diocese and St. Columba Church. Id. at 149-50.

After the Court's decision on St. Columba Church's and the Diocese's first Motion to Dismiss, the Plaintiff revised her allegations and filed the Second Amended Complaint dated July 31, 2003. This matter is currently before the Court on the Defendant, St. Columba Church's Motion to Dismiss the Seventh and Tenth Counts of the Second Amended Complaint

3

dated July 31, 2003 as those counts pertain to St. Columba Church.[2]  For the reasons

articulated below, the Defendant's motion should be denied.

**II.     ARGUMENT**

**A.     Legal Standard**

In ruling on a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6),

the court must assume all factual allegations in the complaint to be true and must draw all

reasonable inferences from those allegations in favor of the plaintiff.  Jaghory v. New York

State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997).  The court may not dismiss a

complaint unless it appears beyond doubt, even when the complaint is liberally construed, that

the plaintiff can prove no set of facts that would entitle her to relief.  Scutti Enters., LLC v.

Park Place Entm't Corp., 322 F.3d 211, 214 (2d Cir. 2003).  A motion to dismiss should not

be granted unless it appears beyond doubt that the plaintiff cannot support a claim entitling her

to relief.  Davis v. Goord, 320 F.3d 346, 350 (2d Cir. 2003).

The function of a motion to dismiss is merely to assess the legal feasibility of the

complaint, not to assay the weight of the evidence which might be offered in support thereof.

Bartolini v. Ashcroft, 226 F. Supp. 2d 350, 353 (D. Conn. 2002).  "The issue is not whether a

plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support

---

[2]     The Diocese has also filed a Motion to Dismiss dated November 20, 2003 seeking to adopt the arguments
raised in the Church's Motion to Dismiss.

4

the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); United States v. Yale-New Haven Hosp., 727 F. Supp. 784, 786 (D. Conn. 1990). "Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." Scheuer, 416 U.S. at 236.

As this is a diversity action, the substantive law of the State of Connecticut controls in this matter. Imbrogno v. Chamberlin, F.3d 87 (2d Cir. 1996); Valley Juice Ltd., Inc. v. Evian Waters of France, Inc., 87 F.3d 604 (2d Cir. 1996).

**B.     The Defendant's Motion To Dismiss Is Untimely And Should Be Stricken or Denied On That Basis**

Rule 15(a) of the Federal Rules of Civil Procedure provides:  "A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders." Fed. R. Civ. P. 15(a).  The Plaintiff's Second Amended Complaint was filed with the Court on August 1, 2003; thus, a response was due on August 11, 2003. St. Columba Church did not file the instant Motion to Dismiss until October 31, 2003, 91 days after the Plaintiff's pleading was filed.  St. Columba Church did not seek any formal or informal extensions of time within which to plead.  There is no excuse for St. Columba Church's failure to plead in a timely manner.  Comparison of its present Motion to Dismiss with the previous Motion to Dismiss dated February 28, 2003, attacking the Plaintiff's

5

prior complaint, reveals that the legal issues raised are identical. In fact, the present Motion to Dismiss is nearly a word for word recapitulation of the Defendant's arguments regarding the Seventh and Tenth Counts that were set forth in its prior Motion to Dismiss. Compare Def.'s Mem. of Law in Support of Mot. to Dismiss, Feb. 28, 2003 with Def.'s Mem. of Law in Support of Mot. to Dismiss, Oct. 30, 2003 (arguments regarding Seventh and Tenth Counts). It is readily apparent that no additional legal research or writing was required. Thus, there is no reason for the Defendant's untimely filing of its present Motion to Dismiss.

This Court has the power to strike St. Columba Church's untimely filing or to deny its motion on the grounds that it is untimely. Cobell v. Norton, 213 F.R.D. 42, 42 (D.D.C. 2003) (court may strike a brief that is untimely filed, even if error was in good faith and even if no prejudice resulted to opposing party); Maxey v. General Motors Corp., 1996 WL 692222, at *2 (N.D. Miss. 1996) (copy attached hereto as Exhibit A) (judge has discretion to deny a motion as untimely unless filing party can demonstrate good cause for untimely filing); see also Friedman v. Inspector Gen'l of U.S. Dep't of State, 1992 WL 321510, at *1 (D.D.C. 1992) (copy attached hereto as Exhibit B) (untimeliness of motion sufficient grounds for denial); Collins v. Commodity Futures Trading Comm'n, 737 F. Supp. 1467, 1476 (N.D. Ill. 1990) (dismissing motions on the basis that they were untimely); Sandsend Financial Consultants Ltd. v. Federal Home Loan Bank Bd., 878 F.2d 875, 881 n.6 (5th Cir. 1989)

6

(noting that "the untimely nature of the motion would, in most cases, provide an independent ground for denying the motion").

In <u>Cobell v. Norton</u>, 213 F.R.D. 42 (D.D.C. 2003), the plaintiff untimely filed several responsive briefs, the nature of which was unspecified in the court's opinion. <u>Id.</u> at 42. The plaintiffs claimed that the untimeliness was due to confusion regarding the due date of the filings. <u>Id.</u> Even though it accepted the plaintiffs' representation and noted that Federal Rule 6(b)(2) allows the court, upon motion, to permit an untimely brief to be filed, the court pointed out that the plaintiffs failed to file a motion seeking relief under Rule 6(b)(2). <u>Id.</u> The court further refused to consider the plaintiff's briefs to constitute such a motion. <u>Id.</u> The court concluded:

> Finally, although there might be merit in plaintiffs' argument that no prejudice has accrued to defendants from plaintiffs' having filed their responsive briefs a day or so late, the Court nevertheless concludes that it is only fair to required all parties to the present case to comply with the Federal Rules of Civil Procedure and Local Rules.

<u>Id.</u>

In <u>Cobell</u>, the briefs were only a few days late and the court *still* did not permit their untimely filing. <u>Id.</u> In stark contrast, in the present case, St. Columba Church's Motion to Dismiss was filed *nearly three months late* and St. Columba Church did not seek any extensions of time or relief under Rule 6(b)(2). Thus, the present Motion to Dismiss should be denied or stricken as untimely.

7

C.     **The Seventh Count Properly States A Cause Of Action In** *Respondeat Superior*

The Connecticut doctrine of *respondeat superior*, "let the master answer," rests on the theory that every person who prefers to manage his or her affairs through others remains bound to so manage them so that third persons are not injured by any breach of legal duty on the party of such others while they are engaged upon his or her business and within the scope of their authority. Kuharski v. Somers Motor Lines, 132 Conn. 269, 274, 43 A.2d 777, 779 (1945); Durso v. A.D. Cozzolinio, Inc., 128 Conn. 24, 27, 20 A.2d 392 (1941). Public policy requires that the master shall be held liable for negligent acts of the servant performed in the course of his employment even though they are not specifically authorized or are at times contrary to instructions. Somers Motor Lines, 132 Conn. at 274, 43 A.2d at 779; Son v. Hartford Ice Cream Co., 102 Conn. 696, 699, 129 A. 778 (1925). "The justification for imputing negligence to an innocent party is the social necessity to provide injured plaintiffs with financially responsible defendants." Nowak v. Nowak, 175 Conn. 112, 125, 394 A.2d 716 (1978).

"It is well established that an employer is liable for the wilful torts of his employee when they are committed within the scope of his employment and in furtherance of the employer's business." Cardona v. Valentin, 160 Conn. 18, 22, 273 A.2d 697 (1970). "The test in Connecticut as to whether an employee is acting within the scope of his or her

8

employment rests on whether the employee was furthering the employer's business." Nutt v.
Norwich Roman Catholic Diocese, 921 F. Supp. 66, 70 (Conn. 1995). "Generally, this test
constitutes a question of fact for the jury to decide." Id.

It is also well established than an employer can be held liable when an employee acts as
a "disobedient servant." Connecticut recognizes that a "negligent, disobedient and unfaithful"
servant may be acting within the scope of employment. A-G Foods v. Pepperidge Farm, 216
Conn. 200, 210, 579 A.2d 69 (1990) (citing Butler v. Hyperion Theatre Co., 100 Conn. 551,
554, 124 A. 220 (1924)). An employer can be held liable even when the employee's actions
are in direct disobedience of the employer's order:

> A master is not held on any theory that he personally interferes to cause the
> injury. It is simply on the grounds of public policy, which requires that he shall
> be held responsible for the acts of those whom he employs, done in and about
> his business, even though such acts are directly in conflict with the orders which
> he has given on the subject.

Stulginski v. Cizauskas, 125 Conn. 293, 296, 5 A.2d 10, 12 (1939). "That the servant
disobeys the orders of the master is never a sufficient defense. It must be shown further that
he ceased to act for the master and in the course of his employment." Eldredge v. Free N
Easy, Inc., No. CV-91-0116177, 1993 WL 317063, at *3 (Conn. Super. Ct. Aug. 13, 1993)
(Lewis, J.) (quoting Son v. Hartford Ice Cream Co., 102 Conn. at 770-71) (copy attached as
Exhibit A). If disregard of rules could serve as exoneration, employers could avoid all liability
for the acts of their employees by simply creating rules and instructing employees not to

9

commit tortious acts.  Carothers v. American Airlines, No. 359943, 1990 WL 283714, at *5 (Conn. Super. Ct. Sept. 27, 1990) (Hammer, J.) (copy attached as Exhibit B); see also Dunn v. New Haven Taxi Cab, No. CV-93-042540S, 1993 WL 338860, at *1 (Conn. Super. Ct. Aug. 31, 1993) (Flynn, J.) (doctrine of respondeat superior based upon policy considerations that the employer shall be responsible, even when actions are directly in conflict with orders given) (copy attached as Exhibit C).

The fact that the Roman Catholic Church has a rule prohibiting priests from engaging in sexual activity makes this situation no different than other disobedient servant cases:  in each instance there was a rule or policy that was broken by the employee.  This situation is no different than the disobedient bartender who overserved a patron; Belanger v. Village Pub I, 26 Conn. App. 509, 603 A.2d 1173 (1992); the bartender who assaulted an unruly patron; Wilson v. R.F.K. Corp., 19 Conn. App. 548, 563 A.2d 738 (1989); or the store employee who assaulted a customer; Pelletier v. Bilbiles, 154 Conn. 544, 227 A.2d 251 (1967).

The Defendant argues that Plaintiff's respondeat superior claim should be dismissed because an employee's sexual assault can never be found to be in furtherance of the employer's business.  See Def.'s Mem. of Law in Support of Mot. to Dismiss, Oct. 30, 2003, at pp. 3-5. While an act of sexual assault by an employee is usually found to be a digression from their duty rather than an act committed in furtherance of the employer's business; see A-G Foods, Inc. v. Pepperidge Farm, Inc., 216 Conn. 200, 207, 579 A.2d 69 (1990); this is not always the

10

case. Connecticut courts have held that there are instances where a trier of fact could reasonably find that sexual assaults perpetrated by an employee were committed in furtherance of the employer's business.

For example, in Mullen v. Horton, 46 Conn. App. 759, 700 A.2d 1377 (1997), a parishioner sued a religious order for a sexual assault committed by a priest. In considering a Motion for Summary Judgment, the court held that a trier of fact could reasonably find that the sexual relations between the priest and the plaintiff grew out of, and were the immediate and proximate result of, the church-sanctioned counseling that the priest and the parishioner were involved in. Therefore, the court determined that it was possible that the sexual assault could have been committed in furtherance of the employer's business. Id. at 765.

Similarly, in Martinelli v. Bridgeport Roman Catholic Diocesan Corp., 989 F. Supp. 110 (Conn. 1997), a parishioner sued a priest and diocese, alleging that he sustained injuries as a result of sexual encounters with the priest while a teenager. The sexual encounters occurred in conjunction with the administration of sacraments and the priest's attempt to educate the parishioner in the reforms of the Roman Catholic liturgy. Id. at 118. The court denied the defendant's Motion for Summary Judgment and held that the sexual abuse was directly connected with the administration of sacraments. Id. The court concluded that a genuine factual dispute existed as to whether the sexual encounters were the culmination of transactions directly related to the priest's duties. Martinelli, 989 F. Supp. at 118.

11

Also, in <u>Doe v. Sharma</u>, No. 257505, 1991 WL 59797 (Conn. Super. Ct. Apr. 2, 1991) (Mihalakos, J.) (copy attached as Exhibit C), the plaintiffs, five minor children and their mother, sued a motel for the sexual assault of the minors by one of the motel's employees. The defendants argued that the attacker was not an employee and that even if he were, he was not acting within the scope of his employment. <u>Id.</u> at *1. In considering a motion for summary judgment, the court noted that ordinarily, the question of whether someone was acting in the scope of his employment is a question of fact. <u>Id.</u> at *2. However, the court pointed out that "there are *occasional cases* where a servant's digression from duty is so clear cut that the disposition of the case becomes a matter of law[,]" emphasizing that the question becomes one of law only occasionally. <u>Id.</u> (emphasis in original). The court ultimately found that questions of fact existed regarding the employment status of the attacker, and summary judgment was denied. <u>Id.</u> Importantly, the court never stated that the sexual assault would be outside the scope of employment even if the attacker were found to be an employee of the motel, as argued by the defendants.

When considering the instant Motion to Dismiss, it is not to be decided whether enough evidence exists to allow the Plaintiff to prevail on the Seventh Count. See <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974). Rather, the sole inquiry is whether the Seventh Count sufficiently *alleges enough to sustain a claim.* See <u>Bartolini v. Ashcroft</u>, 226 F. Supp. 2d 350, 353 (D.

12

Conn. 2002). The Court's determination is limited to whether it is possible that any set of facts may be provable under the Seventh Count which could entitle the Plaintiff to relief.

The Plaintiff has properly alleged in the Seventh Count that Defendant Sullivan acted in furtherance of St. Columba Church's and the Diocese's business purpose. The Plaintiff has alleged that when Defendant Sullivan perpetrated the sexual abuse, he was counseling the Plaintiff regarding matters of her religious faith. 2d Am. Compl, Seventh Count, ¶ 22(a). The Plaintiff further alleges that Defendant Sullivan specifically used those periods of counseling to sexually abuse and assault the Plaintiff and used the trust fostered in those sessions to sexually abuse and assault the Plaintiff on other occasions. 2d Am. Compl., Seventh Count, ¶ 22(b). The Plaintiff also claims that Defendant Sullivan's acts furthered the business of St. Columba Church and the Diocese in that his actions were committed at least in part in an attempt to bring the Plaintiff close to St. Columba Church and to her religious faith, thus benefiting St. Columba Church and the Diocese. 2d Am. Compl., Seventh Count, ¶ 22(c). Finally, the Plaintiff alleges that by bringing the Plaintiff closer to St. Columba Church and her religious faith, St. Columba Church and the Diocese benefited by way of financial donations from the Plaintiff and her family, volunteer time spent by the Plaintiff and her family in serving or otherwise attending to the needs of St. Columba Church and the Diocese, and overall commitment by the Plaintiff and her family to St. Columba Church and the Diocese.

13

2d Am. Compl., Seventh Count, ¶ 22(d).  It is in this manner that Defendant Sullivan's sexual abuse of the Plaintiff was in furtherance of St. Columba Church's and the Diocese's business.

These facts are similar to those alleged in other cases where claims of *respondeat superior* were sufficient to survive a motion for summary judgment.  See Mullen, 46 Conn. 759; Martinelli, 989 F. Supp. 110; Sharma, 1991 WL 59797, at *2 (copy attached as Exhibit C).  The facts alleged in the Seventh Count are legally sufficient and permit the Plaintiff to prove that Defendant Sullivan's acts furthered the business of St. Columba Church and the Diocese.  Therefore, the Motion to Dismiss the Seventh Count should be denied.

### D.    The Tenth Count Is Legally Sufficient

The Defendant claims that the Tenth Count should be dismissed because it does not sufficiently allege the existence of a fiduciary relationship.  Def.'s Mem. of Law in Support of Mot. to Dismiss, Oct. 30, 2003, at pp. 6-8.  Contrary to the Defendant's argument, the Tenth Count adequately states a claim for breach of fiduciary duty.  In Connecticut, a fiduciary relationship is characterized by a unique degree of trust and confidence between the parties, one of whom is under a duty to represent the interests of the other.  Dunham v. Dunham, 204 Conn. 303, 322, 528 A.2d 1123 (1987).  It may be found to exist where there is a justifiable trust confided on one side and a resulting superiority and influence on the other.  Id. Moreover, the Connecticut Supreme Court has carefully refrained from defining a fiduciary relationship in precise detail and in such a manner as to exclude new situations.  Id.  The

14

Second Circuit has specifically recognized that breach of fiduciary duty may be found in the context of a religious institution and a parishioner.  Martinelli v. Bridgeport Roman Catholic Diocesan Corp., 196 F.3d 409 (2d Cir. 1999).

In Martinelli, a case involving the sexual assault of a boy by a priest, the court set forth several factors on which it based its decision that a fiduciary relationship existed between the parishioner and the priest and diocese.  These factors included, inter alia: (1) the plaintiff had a "special and privileged relationship" with the priest; (2) the plaintiff participated in church-sponsored and extracurricular activities with the priest; (3) the priest spent more time with the plaintiff and a few others in a small group than he spent with others; (4) this small group including the plaintiff went for dinners and ice cream with the priest, went on walks and rode around in the car together; (5) the diocese encouraged the priest to work with the youth of the church; (6) the priest was in charge of the diocese's Catholic Youth Organization (CYO); (7) the priest took the plaintiff and another boy to Baltimore and Washington; (8) the diocese was entrusted with reports of abuse by the priest of other youths; and (9) the diocese learned that the priest had assaulted other boys.  Id. at 429-30.

In its brief, the Defendant claims that the Plaintiff has not sufficiently alleged that a particularly close relationship existed between the Plaintiff and Defendant Sullivan and that St. Columba Church knew that such a relationship existed.  Def.'s Mem. of Law in Support of Mot. to Dismiss, at p. 6.  The Defendant argues that as a result, the Plaintiff's breach of

15

fiduciary claim is insufficient.  Id.  Contrary to the Defendant's argument, the Plaintiff's allegations are sufficient to maintain a cause of action for breach of fiduciary duty.  Notice pleading is all that is required under the Federal Rules of Civil Procedure.  Fed. R. Civ. P. Rule 8.  "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002).

In the Tenth Count, the Plaintiff has alleged many facts similar to those in Martinelli. For example, the Plaintiff alleges that she was a member of the church choir that was directed by Defendant Sullivan, that she was the only teen-aged member of that group, and that the choir performed regularly at weekly masses which were conducted by various priests in addition to Defendant Sullivan.  2d Am. Compl., Tenth Count, ¶¶ 10-12.  Thus, others within St. Columba Church and the Diocese hierarchy knew or reasonably should have known of the Plaintiff's participation in this group with Defendant Sullivan.  The Plaintiff also alleges that she attended St. Columba Church's CYO religious classes that were taught by Defendant Sullivan on a weekly basis.  2d Am. Compl., Tenth Count, ¶ 13-14.  The Plaintiff further alleges that Defendant Sullivan attended numerous dinners at the Plaintiff's home and vacationed with the Plaintiff's family in Rhode Island.  2d Am. Compl., Tenth Count, ¶ 17. The Plaintiff also claims that Defendant Sullivan counseled her spiritually and that she visited him at the rectory.  2d Am. Compl, Tenth Count, ¶¶ 16, 9.  On the basis of these facts, St.

16

Columba Church and the Diocese knew or reasonably should have known that a special relationship existed between Defendant Sullivan and the Plaintiff.  The Plaintiff further alleges that St. Columba Church and the Diocese knew or reasonably should have known that Defendant Sullivan engaged in a sexual relationship with another woman prior to being assigned at St. Columba Church.  2d Am. Compl., Tenth Count, ¶ 19.  Finally, the Plaintiff alleges that upon information and belief, St. Columba Church and the Diocese encouraged Defendant Sullivan to develop close relationships with the youth and families of St. Columba Church and to give religious counseling to the youth such as the Plaintiff, and St. Columba Church and the Diocese likewise encouraged youth such as the Plaintiff to participate in church-sponsored activities such as the choir and CYO.  2d Am. Compl., Tenth Count, ¶ 20.

These facts are nearly identical to those alleged in <u>Martinelli</u>, where a fiduciary relationship was found to exist.  On the basis of these facts, the Plaintiff has sufficiently alleged that a special relationship existed between her and Defendant Sullivan and that St. Columba Church and the Diocese knew or reasonably should have known of this relationship, thus giving rise to a fiduciary relationship between the Plaintiff and St. Columba Church and the Diocese.  This is especially so because St. Columba Church and the Diocese knew or reasonably should have known of Defendant Sullivan's prior sexual relationship before his assignment at St. Columba Church and, as a result, St. Columba Church and the Diocese owed the Plaintiff a duty of care.  See <u>Martinelli</u>, 196 F.3d at 430.

17

Whether such a fiduciary relationship exists between the Plaintiff and the Defendant is a question of fact. Sheltry v. Unum Life Ins. Co. of Am., 247 F.Supp.2d 169, 178-79 (D. Conn. 2003) (citing Albuquerque v. Albuquerque, 42 Conn. App. 284, 287, 528 A.2d 1123 (1996)). Thus, the issue cannot be resolved on a motion addressed to the pleadings. See Esposito v. Connecticut College, No. X04CV 970117504S, 1999 WL 81305, at *3 (Conn. Super. Ct. Feb. 10, 1999) (Mihalakos, J.) (copy attached as Exhibit D) (ruling that the existence of a fiduciary relationship cannot be determined on a motion to strike, the state court equivalent to a Rule 12(b)(6) motion to dismiss).

As discussed above, the function of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof. Bartolini v. Ashcroft, 226 F. Supp. 2d 350, 353 (D. Conn. 2002). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); United States v. Yale-New Haven Hosp., 727 F. Supp. 784, 786 (D. Conn. 1990). "Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." Scheuer, 416 U.S. at 236.

It is premature to dismiss the Tenth Count at this time. The Plaintiff's allegations are sufficient and the Plaintiff should be allowed to proceed with her claim and present evidence as to the existence of a fiduciary duty between herself and the Defendant. The existence of a

18

fiduciary relationship cannot be determined in the instant Motion to Dismiss.  Therefore, the

Defendant's motion should be denied.

**III.    CONCLUSION**

Wherefore, for the foregoing reasons, the Defendant, St. Columba Church's Motion to

Dismiss should be denied.

THE PLAINTIFF,
JANE DOE

By _____
HUBERT J. SANTOS
Federal Bar No. 00069
SANDRA L. SNADEN
Federal Bar No. 18586
SANTOS & SEELEY, P.C.
51 Russ Street
Hartford, CT  06106
Tel. (860) 249-6548
Fax (860) 724-5533
Email:  ssnaden@santos-seeley.net

19

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed, first class and postage prepaid,

this 3rd day of December, 2003 to:

Michael E. Driscoll, Esq.
Brown Jacobson, P.C.
22 Courthouse Square
P.O. Box 391
Norwich, CT  06360

John W. Sitarz, Esq.
Lorinda S. Coon, Esq.
Cooney, Scully & Dowling
Hartford Square North
10 Columbus Boulevard
Hartford, CT  06106

Daniel M. McCabe, Esq.
McCabe & Petrucci, LLC
1200 Summer Street
Stamford, CT  06905

George Royster, Esq.
Halloran & Sage, LLP
One Goodwin Square
225 Asylum Street
Hartford, CT  06103

Sandra L. Snaden

20

SANTOS & SEELEY, P.C. • ATTORNEYS AT LAW • 51 RUSS STREET • HARTFORD, CT 06106-1566 • (860) 249-6548 • FAX (860) 724-5533 • JURIS NO. 07230