Not Reported in F.Supp.
(Cite as: 1996 WL 692222 (N.D.Miss.))

Page 1

**H**
Only the Westlaw citation is currently available.

United States District Court, N.D. Mississippi.

Archie MAXEY, Plaintiff
v.
GENERAL MOTORS CORPORATION, Defendant

No. CIV. A. 3:95CV60-D-A.

Nov. 18, 1996.

*MEMORANDUM OPINION*

DAVIDSON, Judge.

*1 By order dated September 19, 1996, United States Magistrate Judge S. Allan Alexander denied as untimely the defendant's motion for a protective order so that it would be relieved of the obligation to produce certain documents to the plaintiff in discovery. *Maxey v. General Motors,* Civil Action No. 3:95cv6-D-A (N.D.Miss. Sep. 19, 1996) (Alexander, M.J.) (Order Denying Motion for Protective Order). On September 27, 1996, the defendant filed an appeal of this order of the Magistrate Judge. The plaintiff responded to this filing on October 17, 1996, and also moved to strike the appeal or, in the alternative, to dismiss the appeal. After having considered the order of the Magistrate Judge and the submissions of the parties, the undersigned is of the opinion that the order is neither clearly erroneous nor contrary to law. The undersigned shall not modify or set aside Judge Alexander's order of September 19, 1996.

The crux of the defendant's original motion before the Magistrate Judge was that the documents which the plaintiff sought produced and the defendant sought protected were protected by the attorney-client and "self-critical analysis" privileges. The Magistrate Judge never reached the actual question of whether or not the documents were in fact protected by these privileges, however, but rather denied the motion for two particular reasons: 1) the motion itself was untimely; and 2) the claims of privilege asserted for these documents were untimely.

I. DISCUSSION

A. Appeal or Objection?

The plaintiff's first ground in opposition to this court's consideration of the matter at hand is the argument that there is no mechanism within the Federal Rules of Civil Procedure for the defendant to "appeal" the order of the Magistrate Judge to the undersigned. Rather, the only proper review of the Magistrate Judge's order by this court would be pursuant to Fed.R.Civ.P. 72(a) by the filing of "objections" to the order within ten days of its entry. Fed.R.Civ.P. 72(a). The plaintiff is correct that this court's review of the Magistrate Judge's order is pursuant to that rule, and this court will only modify or set aside that order if it is "clearly erroneous or contrary to law." Fed.R.Civ.P. 72(a). That the defendant styled its pleading in this matter as an "appeal" is a mere semantical distinction, for it did otherwise properly and timely file its objections. This fact alone does not present sufficient reason for this court to strike the defendant's pleading or refuse consideration of it.

B. TIMELINESS OF THE MOTION

1. Generally

While the express language of Fed.R.Civ.P. 26 does not set limits within which a motion for protective order must be made, there is an implicit requirement that the motion be timely, or seasonable. *See, e.g., Brittain v. Stroh Brewery Co.,* 136 F.R.D. 408, 413 (M.D.N.C.1991); *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.,* 129 F.R.D. 483, 487 (D.N.J.1990);. *See also;* Wright & Miller, 8 Federal Practice and Procedure, § 2035 (2nd Ed.1994). A motion for protective order is timely if made prior to the date set for the discovery. *See, e.g., Wang v. Hsu,* 919 F.2d 130, 131 (10th Cir.1990); *Brittain,* 136 F.R.D. at 413; *United States v. International Business Machines,* 70 F.R.D. 700, 701 (S.D.N.Y.1976) ("Such motions under Rule 26(c) must be served before the date set for production."); Hon. David Hittner, Federal Civil Procedure Before Trial, p. 11-35 ("A motion for protective order should be noticed at the earliest possible time and certainly before the discovery procedure is to occur."). In this case, the defendant's motion for a protective order was filed *after* its deadline to respond to the plaintiff's request for production of documents, and was therefore

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.
(Cite as: 1996 WL 692222 (N.D.Miss.))

Page 2

untimely as it was not made prior to the deadline for the discovery in question.

*2 Further, the defendant can find no solace in pointing the finger back at the plaintiff for his failure to present the issue to the court via a Motion to Compel or for some type of conference with the court. A timely motion for a protective order by the party seeking relief from the obligation to comply with a discovery request is the best manner in which to have privileged documents shielded from the discovery process:

> Defendant argues, that for written di2scovery, it is sufficient that it note its objections within the time permitted, and that it should not have to move for a protective order until after the plaintiffs move to compel the discovery. Nothing in Rule 26© suggests that there should be such a dichotomy between oral depositions and written discovery. The procedure turns the normal state of obligations on its head. *The party seeking the protective order, who has the burden of requesting and supporting it, should also be responsible for initiating the process.* Permitting that party to merely note its objections and then sit back and wait for a motion to compel can only serve to prolong and exacerbate discovery disputes

*Brittian,* 136 F.R.D. at 413 (emphasis added); *but see* Wright & Miller, 8 Federal Practice and Procedure § 2035, p. 481 ( "A party may not remain completely silent when it regards discovery as improper. If it desires not to ... respond, it must object properly or seek a protective order ... "). This court agrees with the court in *Brittain,* and the defendant should have brought this matter to the attention of the court before the time expired for his response to the plaintiff's request for production. As the defendant is the party seeking to protect the documents from disclosure in this case, it should not be allowed to sit back and force the plaintiff to take the initiative to file a Motion to Compel with this court.

The Magistrate Judge was not required to deny outright the defendant's motion as untimely, however. If the defendant can demonstrate good cause for its failure to timely file, a meritorious motion for protective order may nevertheless be granted. *Brittian,* 136 F.R.D. at 414; Wright & Miller, 8 Federal Practice and Procedure § 2035, p. 478 ("[T]he courts still consider the timeliness of a motion and look to all of the circumstances in determining whether the motion is untimely."). While the Magistrate Judge had the discretion to deny the defendant's motion as untimely in this case, the defendant was entitled to the opportunity to demonstrate good cause in explanation of its failure to timely file. It is not clear from the Magistrate Judge's order that she employed this standard or considered in this particular context any proffered explanation of the defendant for its failure to timely file a motion for protective order. Were this the only justification for denying the defendant's motion as untimely, the undersigned would return this matter to the Magistrate Judge for a determination of the defendant's proffered "good cause" for its failure to timely file. As noted below, however, the Magistrate Judge had more than one sufficient reason to deny the motion.

2. Timeliness of the motion in light of the Uniform Plan

*3 The Magistrate Judge did not, however, address the "timeliness" issue as it has thus far been discussed by this court. Rather, she determined that the motion was untimely with respect to a provision of this court's Uniform Plan for the implementation of the Civil Justice Reform Act of 1990. 28 U.S.C. § 471 et seq. Magistrate Judge Alexander noted that the defendant filed its motion for protective order with the court on August 26, 1996, two days before the expiration of the discovery deadline. When considering the time allowed for briefing under Local Rule 8(d), the Magistrate Judge reasoned, there was no practical way for the matter to be resolved prior to the expiration of the discovery deadline. *See* Uniform Civil Justice Expense and Delay Reduction Plan (hereinafter "Uniform Plan"), Section Four (II)(A) ("All discovery motions must be filed so that they do not affect the discovery deadline."). The Magistrate Judge further stated in her order:

> To exacerbate matters, defendant stated in its motion that it "desires to supplement this motion with the deposition testimony of Robert Sinke after that transcript is received ... in order that this Court can fully understand the issues raised in this motion." Defendant then waited until September 6, 1996--nine days after expiration of the discovery deadline--to serve its proposed "supplement." Aside from the fact that supplementation of this sort is not contemplated anywhere in the local rules that govern this court, defendant used its supplementation not only to

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.  
(Cite as: 1996 WL 692222 (N.D.Miss.))

Page 3

produce the deposition of Mr. Sinke, but also to cite new cases and make new legal arguments not expressly included in its August 26, 1996 motion. Defendant will not be allowed to circumvent the discovery deadline in this fashion.
*Maxey*, (Order Denying Motion for Protective Order, p. 2).

The undersigned notes that the defendant itself acknowledges that the documents it seeks to protect would otherwise be responsive to a request for production of documents propounded by the plaintiff on July 24, 1996. Understandably, some time would have been required to make a good faith attempt at resolution of this matter prior to seeking a protective order from the court. Fed.R.Civ.P. 26(c). Nevertheless, the purpose of Section Four (II)(A) is to facilitate the expedient resolution of litigation by preventing unnecessary extensions of the discovery period. Having all discovery disputes before the court prior to the expiration of the discovery period enables this court to resolve those disputes quickly and hopefully permit the parties to conduct any "follow up" discovery which results from the disputed discovery within the pre-established discovery period.

From the facts that have been presented to this court, the defendant should have been aware of the need for a protective order in sufficient time for it to file its motion in compliance with both Fed.R.Civ.P. 26(c) as well as Section Four (II)(A) of the Uniform Plan. Therefore, the Magistrate Judge was well within her discretion to deny the defendant's motion as untimely on this basis. Here again, denial of an untimely motion is not an absolute rule. It has been this court's practice to allow the late movant to demonstrate "good cause" for its failure to timely file and to permit late filings when they are supported with such "good cause." As previously noted, the Magistrate Judge's order does not contain anything which indicates to this court that the Magistrate Judge sought explanation for the untimely filing or considered such a "good cause" exception.

C. TIMELINESS OF THE CLAIMS OF PRIVILEGE

*4 Finally, the Magistrate Judge determined that the defendant had waived its assertion of privilege which served as the basis for its motion for a protective order:

Moreover, defendant did not make a claim of privilege in a timely manner. Defendant produced the documents in question for *in camera* review by the court. The documents appear to have been generated during late 1989 and early 1990, and there does not seem to be any dispute between the parties regarding the documents' relevancy to this lawsuit. Because the documents were in existence well in advance of the filing of this lawsuit, and the defendant does not claim that the documents came to light only recently, they should have been disclosed, or a claim of privilege made, as part of the defendant's pre- discovery disclosure of core information or a supplement thereto.
At the absolute latest, defendant should have made an effective claim of privilege in response to plaintiff's request for production of documents.
*Maxey*, Civil Action No. 3:95cv6-D-A (N.D.Miss. Sep. 19, 1996) (Order Denying Motion for Protective Order, p. 3). The Magistrate Judge went on to explain that the defendant failed to comply with the requirements of Fed.R.Civ.P. 26(b)(5) when it responded to the plaintiff's request for production of the documents in question by merely stating "the information is protected from disclosure by the work product doctrine and the attorney-client and self- critical analysis privileges. When GM investigates the kind of allegations plaintiff describes in this request, it is either in response to, or in anticipation of, litigation."

The undersigned agrees with the Magistrate Judge that the defendant failed to adequately assert its claim of privilege in a timely manner. The Uniform Plan requires that such assertions of privilege must be made at the time of their initial disclosures to the opposing party, and the defendant should have *at least* supplemented its initial disclosures [FN1] as the Uniform Plan requires. Uniform Plan, Section Four (I)(A)(7). As well, the defendant's response to the plaintiff's request for production for these documents was insufficient to meet its obligation under the Federal Rules of Civil Procedure. Fed.R.Civ.P. 26(b)(5) (stating party seeking protection of privilege "shall make the claim expressly and shall describe the nature of the documents, communications or things not produced or disclosed in a manner that, without revealing the information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection."). The generalized response of the defendant to the plaintiff's request for

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.
(Cite as: 1996 WL 692222 (N.D.Miss.))

Page 4

production was merely an assertion of the privilege itself, and does not explain the nature of the documents such that anyone could assess the applicability of the privilege claimed. The defendant argues that if this conclusion is correct, then the plaintiff's discovery responses were also deficient. That matter is not before the court, and is irrelevant in any event. The Magistrate Judge was well within her discretion in deeming the privilege waived in this case, particularly in light of the inadequate response provided to the request and to provide a description of the document in a supplementation to its initial disclosures. Fed.R.Civ.P. 26(b)(5). This court cannot say that the Magistrate Judge's decision in this matter is either clearly erroneous or contrary to law.

> FN1. Pursuant to amendments to the Uniform Plan made effective July 1, 1996, Section Four (I)(A)(1)(b) requires that:
> When a party withholds information by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things that produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection. The privilege log should contain at least the following information: name of the document; description of the document; date; author(s); recipient(s); and nature of the privilege. To withhold materials without such notice subjects the withholding party to sanctions under Rule 37, FRCP, and may be viewed as a waiver of the privilege or protection.
> While the defendant's initial disclosures in this case were served before this amendment became effective, this enactment governed the defendant's obligation to make supplemental disclosures after July 1, 1996.

III. CONCLUSION

*5 The Magistrate Judge had a sufficient reason to deny the defendant's motion for a protective order, in that the defendant had waived the asserted privilege by failing to adequately present its claim of privilege. The Magistrate Judge also possessed the discretion to deny the defendant's motion as untimely for two different reasons, but there is nothing before the court that indicates that she entertained the defendant's proffer of "good cause" reason for the untimely filing. In any event, as the Magistrate Judge had a valid ground for the denial of the motion, this court shall not disturb the order. This court cannot say that the Magistrate Judge's order in this matter was either clearly erroneous or contrary to law.

A separate order in accordance with this opinion shall issue this day.

*ORDER*

Pursuant to a memorandum opinion issued this day, it is hereby ORDERED THAT:

1) the plaintiff's motion to strike the defendant's appeal of the September 19, 1996 order of United States Magistrate Judge S. Allan Alexander is hereby DENIED;

2) the plaintiff's motion to dismiss the defendant's appeal of the September 19, 1996 order of United States Magistrate Judge S. Allan Alexander is hereby DENIED;

3) the defendant's objections to the Magistrate Judge's decision of September 19, 1996 are hereby OVERRULED; and

3) the decision of United States Magistrate Judge S. Allan Alexander dated September 19, 1996, denying the defendant's motion for a protective order is hereby AFFIRMED. This court shall not modify or set aside that order of the Magistrate Judge.

SO ORDERED.

1996 WL 692222 (N.D.Miss.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1992 WL 321510
(Cite as: 1992 WL 321510 (D.D.C.))

Page 1

C
Only the Westlaw citation is currently available.

United States District Court,
District of Columbia.

Stuart FRIEDMAN, Plaintiff,
v.
INSPECTOR GENERAL of the UNITED STATES DEPARTMENT OF STATE, Defendant.

Civ. A. No. 92-2312 SSH.

Oct. 21, 1992.

MEMORANDUM ORDER

STANLEY S. HARRIS, District Judge.

*1 Plaintiff seeks to quash a subpoena, issued by defendant to the State Department Federal Credit Union, that seeks production of plaintiff's banking records pursuant to the Right to Financial Privacy Act of 1978 ("the Act"). See 12 U.S.C.A. § 3401 et seq. The Act allows financial institutions' customers, such as plaintiff, to challenge the issuance of such subpoenas. See 12 U.S.C.A. § 3410. However, customer challenges must be made "[w]ithin ten days of service or within fourteen days of mailing of a subpena [sic]." Id. § 3410(a).

Here, plaintiff was notified of the subpoena by letter dated August 3, 1992. This notice set forth the procedures for challenging the subpoena, as required by the Act, and informed plaintiff that if he did not follow the outlined procedures "upon the expiration of ten days from the date of personal service or fourteen days from the date of mailing of this notice, the records or information requested therein may be made available." Letter of John D. Duncan, Jr., Counsel to the Inspector General, to Stuart Friedman, at 2 (attached to plaintiff's motion). Plaintiff's motion to quash was not filed in this Court until October 15, 1992. Therefore, the Court finds that plaintiff's motion is untimely.

Under § 3410, "[a] customer's ability to challenge a subpoena is cabined by strict procedural requirements." Securities Exch. Comm'n v. Jerry T. O'Brien, Inc., 104 S.Ct. 2720, 2727 (1984). In a discussion of the procedural requirements, the Supreme Court has emphasized the importance of the time restrictions in the Act:

Perhaps most importantly, the statute is drafted in a fashion that minimizes the risk that customers' objections to subpoenas will delay or frustrate agency investigations.
Id.

Therefore, the Court finds that untimeliness is sufficient grounds for denying a motion to quash. See Sandsend Fin. Consultants, Ltd. v. Federal Home Loan Bank Bd., 878 F.2d 875 n. 6 (5th Cir.1989) (noting that "the untimely nature of the motion would, in most cases, provide an independent ground for denying the motion"); Collins v. Commodity Futures Trading Comm'n, 737 F.Supp. 1467, 1476 (N.D.Ill.1990) (dismissing motions on the basis that they were untimely). Because the Court finds that plaintiff's motion is untimely, it denies plaintiff's motion to quash and dismisses the case. [FN1] Accordingly, it hereby is

ORDERED, that the motion to quash is denied. It hereby further is

ORDERED, that the case is dismissed.

SO ORDERED.

> FN1. Because the Court finds that plaintiff has not complied with § 3410(a), it does not order defendant to file a response. See 12 U.S.C.A. § 3410(b).

1992 WL 321510, 1992 WL 321510 (D.D.C.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
3 Conn. L. Rptr. 814
(Cite as: 1991 WL 59797 (Conn.Super.))

Page 1

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut, Judicial District of New Haven.

John DOE, et al.,
v.
Lokesh SHARMA, et al.

No. 25 75 05.

April 2, 1991.

## MEMORANDUM OF DECISION

MIHALAKOS, Judge.

*1 This matter comes before the Court in Defendants' Motion for Summary Judgment.

The plaintiffs consist of five minor children and their mother who were paying guests at defendants' motel between October 21, 1986 and December 17, 1986. The complaint alleges that an employee of the defendants committed assault, sexual assault and forcible rape on the minors. The gravamen of the plaintiffs' complaint is that the defendants are liable for the actions of their employee under the doctrine of respondeat superior. Applicable counts are: 1, 3, 5, 7 and 9 of the plaintiffs' complaint.

Count two alleges negligence in hiring the employee and failure to properly supervise his activities and that they knew or should have known of his dangerous propensities.

Count eleven alleges violation of Connecticut Unfair Trade Practices Act, i.e. CUTPA.

Pleadings are now closed.

"Practice Book Section 384 provides that summary judgment 'shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *Connell v. Colwell,* 214 Conn. 242, 246 (1990). (citation omitted.)

"The party moving for summary judgment bears the burden of proving the absence of a dispute as to any material fact ..." and, "(t)he court must view the evidence in the light most favorable to the nonmovant." *Nolan v. Borkowski,* 206 Conn. 495, 500 (1988). (citations omitted.) When ruling on a summary judgment motion, "the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." *Id.* at 500. (citation omitted.)

Defendants argue that the attacker was not an employee, and even if he were, he was not acting within the scope of his employment or in furtherance of the employer's business.

Both of the parties admit that the question of whether an employee has committed a tort within the scope of his employment and in furtherance of the employer's business is ordinarily a question of fact.

The defendant, however, also maintains that if the employee's digression from duty is so clear cut (as in this case), then the issue may be decided as a matter of law.

Defendants have not filed sufficient supporting documentation with their motion to substantiate the nature of the employee's duties or the range and scope of his employment. On the other hand, the plaintiffs have submitted portions of dispositions which place a cloud on defendants' claim that there are no material facts in dispute. The deposition of Christopher Bowen suggests that the scope and nature of the attacker's duties are far from clear.

Our Supreme Court has held that a material issue of fact is one that " 'will make a difference in the result of the case.' " *Hammer v. Lumberman's Mutual Casualty Co.,* 214 Conn. 573, 578 (1990). (citations omitted.) " 'The movant has the burden of showing the nonexistence of such issues....' " *Id.* at 579. " 'To oppose a motion for summary judgment successfully, the nonmovant must recite specific facts ... which contradict those stated in the movant's affidavits and documents.' " *Id.*

*2 "(I)n order to hold an employer liable for the intentional torts of his employee, the employee must be acting within the scope of his employment and in furtherance of the employer's business." *A-G*

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
3 Conn. L. Rptr. 814
(Cite as: 1991 WL 59797 (Conn.Super.))

Page 2

Foods, Inc. v. Pepperidge Farm, Inc., 216 Conn. 200, 208 (1990). However, "there are *occasional cases* where a servant's digression from duty is so clear cut that the disposition of the case becomes a matter of law." *Id.* at 207.

The complaint alleges, inter alia, that the attacker was employed for compensation as a room attendant. Defendants deny this, although they do admit he performed some chores. Clearly, there is a question of fact as to the status of the attacker. The issue of "employment" is, of necessity, tied to the issue of "acting within the scope of one's employment." Therefore, even if this Court were to decide that acting within the scope of the employment was an issue of law, summary judgment would be inappropriate because there are mixed issues of fact and law to be decided. See *Fogarty v. Rashaw,* 193 Conn. 442, 446 (1984). Also, *Michaud v. Gurney,* 168 Conn. 431, 434 (1975), where our court stated that summary judgment is especially ill adopted ... where ... the ultimate issue in contention involves a mixed question of fact and law.

Similarly, the defendants' challenge on the CUTPA claim must also fail. Such a claim within the framework of this complaint clearly falls within the province of a motion to strike since it directly challenges the legal sufficiency of the complaint.

Both parties appear to agree that the validity of a CUTPA claim must be tested under the "cigarette rule" test for unfairness. This test provides as follows:

"(1) (W)hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise--whether ... it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers...."

*A-G Foods, Inc. v. Pepperidge Farm, Inc.,* 216 Conn. 200, 215 (1990).

The plaintiffs' complaint in relevant parts alleges that:

"(T)he defendants represented the Bel-Air Motel to plaintiffs and the general public as ... a reasonably safe place for defendants' paying guests to stay, and that they would take such steps as were reasonably necessary to provide for the safety of their paying guests...."

Plaintiffs' complaint, count eleven, at paragraph 3, and:

"The defendants' representations and agreements were false and deceptive in that defendants failed and refused to provide plaintiffs with a reasonably safe place to stay...."

Plaintiffs' complaint, count eleven, at paragraph 10.

The plaintiffs offer excerpts of deposition material which clearly raise an issue of fact as to whether the defendants misrepresented, or failed to disclose, material facts that would have affected the plaintiffs' decision to stay at the motel.

*3 Accordingly, even if the Court were to decide the CUTPA claim on its merits, viz a viz, the motion for summary judgment, it too must fail. A substantial issue of fact as to whether the defendants misrepresented the safety of the motel clearly exists.

Motion is denied.

1991 WL 59797 (Conn.Super.), 3 Conn. L. Rptr. 814

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d  
(Cite as: 1999 WL 81305 (Conn.Super.))

Page 1

H  
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.

Craig ESPOSITO  
v.  
CONNECTICUT COLLEGE et al.

No. 543055.

Feb. 10, 1999.

MEMORANDUM OF DECISION

MIHALAKOS.

*1 This matter comes before the jury on plaintiff's Motion to Strike Defendants' two counterclaims. Specifically, the plaintiff alleges that both defenses are legally insufficient.

The defendants have brought a two count counterclaim against the plaintiff, Craig Esposito, alleging breach of fiduciary duty and breach of the duty of loyalty. The counterclaim sets forth the following facts. The defendant, Connecticut College, employed the plaintiff from on or about December of 1989 to August of 1997. For the majority of that period the plaintiff served as the "Director of Planned Giving." In that capacity, the plaintiff assisted potential donors in structuring their charitable donations so that their "planned gifts" would be consistent with their financial, estate and tax concerns. A "planned gift" is generally understood to be a charitable gift that requires a formal document to be effective. Planned gifts include, among other things, trusts, annuities and testamentary bequests.

During the plaintiff's tenure as Director of Planned Giving, the college received two large financial gifts from the estates of Joanne Toor Cummings ("Cummings gift") and Roman Weller ("Weller gift"). The plaintiff was familiar with the terms of both the Cummings and Weller gifts and had access to all files concerning these two gifts. On August 1, 1997, the plaintiff faxed a complaint to the office of the Attorney General of Connecticut alleging that the college was not using the proceeds of the Cummings gift in conformance with the provisions of Ms. Cummings' will, and that the misuse of funds could also be happening with the bequest of Roman Weller. On that same day, a copy of the plaintiff's complaint was sent to a reporter for the New London Day newspaper. The newspaper published a story detailing the plaintiff's allegations on August 3, 1997.

On August 5, 1997, the college terminated the plaintiff's employment based on the plaintiff's "less than fully satisfactory job performance." On September 2, 1997, the plaintiff filed a fifteen count "First Amended Complaint" against the defendants alleging various contractual and tort violations which stemmed primarily from the termination of his employment.

On December 17, 1997, the defendants filed a two count counterclaim to the plaintiff's first amended complaint alleging breach of fiduciary duty (count one) and breach of the duty of loyalty (count two). Both count one and count two of the counterclaim allege that the plaintiff: (1) failed to disclose to the college his concerns and evidence of misuse of funds before advising the Attorney General and publicizing his allegations; (2) failed to take adequate steps to correct the problem he perceived with the college's use of charitable funds; (3) failed to investigate his allegations before presenting them to the Attorney General and before publicizing them; and (4) deliberately withheld information known, or reasonably available to him, reflecting on the subject matter of his allegations.

*2 The plaintiff filed a motion to strike both counts of the defendants' counterclaim on August 12, 1998, along with a supporting memorandum of law. On September 29, 1998, the defendants filed an objection and a memorandum of law in support.

"[A] counterclaim is a cause of action existing in favor of the defendant against the plaintiff and on which the defendant might have secured affirmative relief had he sued the plaintiff in a separate action ... A motion to strike tests the legal sufficiency of a cause of action and may properly be used to challenge the sufficiency of a counterclaim." (Citations omitted; internal quotation marks

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1999 WL 81305 (Conn.Super.))

Page 2

omitted.) *Fairfield Lease Corp. v. Romano's Auto Service,* 4 Conn.App. 495, 496, 495 A.2d 286 (1985).

The plaintiff moves to strike the defendants' two count counterclaim on the grounds that it is legally insufficient.

The plaintiff alleges that: (a) Connecticut does not recognize an independent cause of action for breach of fiduciary duty or breach of loyalty; (b) even if the court recognizes an independent cause of action for these claims, the employer-employee relationship is not fiduciary in nature and, therefore, the plaintiff did not owe the defendant a fiduciary duty or duty of loyalty; and (c) even if a cause of action exists for breach of fiduciary duty and breach of loyalty, the defendant has not alleged sufficient facts.

The plaintiff also moves to strike on the grounds that the counts do not arise out of the same transaction as the subject complaint, contrary to the dictates of Practice Book § 10-10, and the counts fail to state causes of action as legal or equitable setoffs.

The plaintiff argues that Connecticut does not recognize a cause of action for breach of fiduciary duty and breach of the duty of loyalty.

Connecticut has recognized a separate cause of action for breach of fiduciary duty in *Dunham v. Dunham,* 204 Conn. 303, 320, 528 A.2d 1123 (1987), overruled on other grounds, *Santopietro v. New Haven,* 239 Conn. 207, 213 n. 8, 682 A.2d 106 (1996), and *Sherwood v. Danbury Hospital,* Superior Court, judicial district of Danbury at Danbury, Docket No. 324786 (March 21, 1997) (*Stodolink, J.*). See also R.L. Newman and J.S. Wildstein, *Tort Remedies in Connecticut* (1996) § 16-2, p. 229 (one theory of recovery similar in many respects to an action for legal malpractice is a cause of action for breach of fiduciary duty).

In *Sherwood v. Danbury Hospital,* the defendant filed a request to revise three counts of the plaintiff's complaint. The defendant sought to delete the entire third count, breach of fiduciary duty, on the ground that it did not set forth a cause of action which was separate from the plaintiff's negligence count. The court held that the breach of fiduciary duty claim was not "an unnecessary or improper allegation" as it was a recognized cause of action in Connecticut. *Sherwood v. Danbury Hospital, supra,* Superior Court, Docket No. 324786.

*3 This court finds, however, that no separate cause of action exists in Connecticut for breach of the duty of loyalty. "[T]he duty of loyalty derives from the prohibition against self-dealing that inheres in the fiduciary relationship." *Saginaw Products Corporation v. Cavallo,* Superior Court, judicial district of New Haven at New Haven, Docket No. 326329 (August 11, 1994) (*Burns, J.*), aff'd, 40 Conn.App. 771, 673 A.2d 120 (1996). Consequently, a breach of the duty of loyalty by a fiduciary is conduct which may give rise to a breach of fiduciary duty claim. Therefore, the duty of loyalty is actually a subset, or an element of, the breach of a fiduciary duty claim, rather than its own cause of action. See *Beverly Hills Concepts, Inc. v. Schatz and Schatz,* 247 Conn. 48, 57, 717 A.2d 724 (1998) (breach of a fiduciary duty implicates a duty of loyalty and honesty); *Saginaw Products Corporation v. Cavallo, supra,* Superior Court, Docket No. 326329 (fiduciary duty comprises two prongs: a duty of care, and a duty of loyalty).

Accordingly, count two is merely an extension of count one and, therefore, the motion to strike is granted as to count two, Breach of the Duty of Loyalty.

The court will now review the remaining arguments posed by the plaintiff in opposition to count one, breach of fiduciary duty claim.

The plaintiff next argues that the allegations do not sufficiently allege a cause of action for breach of fiduciary duty because: (1) the employer-employee relationship is not fiduciary in nature; and (2) no facts have been alleged which would give rise to a claim for breach of fiduciary duty.

The Connecticut Supreme Court has "refused to define a fiduciary relationship in precise detail and in such a manner as to exclude new situations, choosing instead to leave the bars down for situations in which there is a justifiable trust confided on one side and a resulting superiority and influence on the other." (Internal quotation marks omitted.) *Alaimo v. Royer,* 188 Conn. 36, 41, 448 A.2d 207 (1982). "Consequently, the question of whether a fiduciary duty exists in the present action is a question of fact to be determined by the test set forth in *Alaimo [v. Royer]."* *Chmelecki v.*

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1999 WL 81305 (Conn.Super.))

Page 3

*Decorative Screen Printers, Inc.,* Superior Court, judicial district of New London at New London, Docket No. 532041 (June 19, 1995) (*Hurley, J.*) (whether a fiduciary relationship exists by virtue of employer-employee relationship is a question of fact). "It is inappropriate to decide a question of fact on a motion to strike." *Id.*

The plaintiff also argues that no facts have been alleged which would support the defendant's claim for breach of fiduciary duty.

To assert a claim for breach of a fiduciary duty the plaintiff has the burden of proving the existence of a fiduciary relationship. A fiduciary relationship is characterized by a "unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other." *Dunham v. Dunham, supra,* 204 Conn. 322. "If the plaintiff proves the existence of a fiduciary relationship, the proof of that relationship imposes a twofold burden upon the fiduciary. First, the burden shifts to the fiduciary to prove fair dealing. Second, the fiduciary must prove fair dealing by clear, convincing and unequivocal evidence." R. Newman and J. Wildstein, *supra,* § 16-2(d), p. 231, citing *Dunham v. Dunham, supra,* 204 Conn. 322-23.

*4 In determining whether a particular act or transaction on the part of the fiduciary is fair, the court will consider the fiduciary's acts in light of all of the circumstances. "Important factors in determining whether a particular transaction is fair include a showing by the fiduciary: (1) that he made a free and frank disclosure of all relevant information he had; (2) that the consideration was adequate; and (3) that the principal had competent and independent advice before completing that transaction ... (4) the relative sophistication and bargaining power among the parties. R. Newman and J. Wildstein, *supra,* § 16-2(b), p. 231.

In the present case, the counterclaim asserts the existence of a fiduciary relationship by way of the following allegations: "[The plaintiff] represented to the College that he could provide the College with special technical assistance in the areas of estate planning, financial planning and tax laws. [The plaintiff] intended for the College to rely on these representations." Counterclaim, 38. "Based upon [the plaintiff's] representations, the College justifiably and reasonably relied on him to provide such special technical assistance and placed a high level of trust in him to provide these services ..." 40.

The defendant then alleges conduct on the part of the plaintiff which runs contrary to the aforementioned expectations. Specifically, the defendant alleges that the plaintiff deliberately failed to disclose to the college his concerns about and evidence of misuse of funds; failed to take adequate steps to correct this problem; and failed to take reasonable steps to investigate his allegations before making them public.

The court concludes that the defendant has alleged sufficient facts to establish that a fiduciary relationship existed and that a breach of this relationship may have occurred.

The plaintiff also argues that the breach of fiduciary duty claim does not arise out of the same transaction as the subject complaint.

"In any action for legal or equitable relief, the defendant may file counterclaims against the plaintiff provided that each counterclaim arises out of the transaction that is the subject of the plaintiff's complaint." *Carothers v. Connecticut Building Wrecking Co.,* 19 Conn.App. 216, 220, 561 A.2d 971 (1989), citing Practice Book § 116 (now § 10-10). "The rule permits joinder of closely related claims arising out of the same transaction where such joinder is in the best interests of judicial economy." *Id.* "The transaction is one of practicality ... Relevant considerations in determining whether the transaction test has been met include whether the same issues of fact and law are presented by the complaint and the [counterclaim] and whether separate trials on each of the respective claims would involve a substantial duplication of effort by the parties and the courts." (Citations omitted.) *Jackson v. Conlan,* 171 Conn. 161, 166-67, 368 A.2d 3 (1976).

*5 In the present case, count one of the counterclaim alleges a breach of fiduciary duty stemming from the plaintiff's failure to disclose to the college his concerns regarding the misuse of funds from certain charitable bequests and his failure to take reasonable steps to investigate his allegations before advising the Attorney General and before publicizing them to a local newspaper reporter.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1999 WL 81305 (Conn.Super.))

Page 4

These allegations are closely related to a number of claims contained in the plaintiff's complaint, where he asserts that the defendant published several derogatory statements concerning his "negligent conduct" or "misconduct" in publicizing the college's alleged misuse of funds, and that said publication served to tarnish his reputation in the fundraising community.

The allegations posed by both the plaintiff and defendant stem directly from the same transaction--the publication of the alleged mishandling of charitable funds by Connecticut College. The underlying issue, whether the plaintiff failed to take reasonable steps to ensure that his allegations were well-founded, is the same.

Therefore, the court finds that count one of the counterclaim does not violate the requirements of Connecticut Practice Book § 10-10.

The plaintiff next argues that if the court finds that the defendants' counterclaim is legally insufficient, the action cannot be saved by classifying it as a proper legal or equitable setoff. This court has found that count one of the defendants' counterclaim sufficiently alleges a cause of action for breach of fiduciary duty. Therefore, the court need not consider whether the breach of fiduciary duty counterclaim could be saved as a proper setoff.

Accordingly, it is submitted that the motion to strike should be denied as to count one (breach of fiduciary duty), and granted as to count two (breach of the duty of loyalty).

Motion to strike count one of the counterclaim is denied and is granted as to count two.

1999 WL 81305 (Conn.Super.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works