**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
---------------------------------x
                                 :
JANE DOE                         :
                                 :
        Plaintiff,               :
                                 :     3:02 CV 1649(GLG)
v.                               :     Opinion
                                 :
THE NORWICH ROMAN CATHOLIC       :
DIOCESAN CORPORATION;            :
ST. COLUMBA CHURCH AND           :
PATRICK J. SULLIVAN              :
                                 :
        Defendants.              :
                                 :
---------------------------------x
```

Pending before the court are defendant Norwich Roman Catholic Diocesan Corporation's and defendant St. Columba Church's [collectively "the defendants"] motions to dismiss the seventh and tenth counts asserted by plaintiff Jane Doe in her second amended complaint filed on August 1, 2003. For the reasons stated below, the court **DENIES** defendants' motions to dismiss. (**Docs. #46 and #49**).

I. Procedural History and Facts

Plaintiff Jane Doe, proceeding under fictitious name, initiated this action against the Norwich Roman Catholic Diocesan Corporation, St. Columba Church, and Patrick J. Sullivan. Plaintiff, alleges that defendant Sullivan, who was a Roman Catholic priest, sexually assaulted and abused her when she when she was a member of St. Columba Church, a parish which is a part of the Norwich Roman Catholic Diocese.

1

Plaintiff alleges that the sexual assaults commenced in 1968 when she was 15 years old and continued until 1969 when she was 16 years of age, and that the assaults occurred at various locations, including the St. Columba Church rectory. Plaintiff seeks, <u>inter</u> <u>alia</u>, compensatory and punitive damages.

On June 26, 2003, this court issued an opinion granting defendants' motions to dismiss count seven, respondeat superior, without prejudice to plaintiff's filing an amended complaint alleging sufficient facts to indicate that Sullivan's alleged misconduct was in furtherance of Church business and/or Diocese's business. <u>See</u> <u>Doe v. Norwich Roman Catholic Diocesan Corp.</u>, 268 F.Supp.2d 139, 143 (D.Conn. 2003). The court also granted defendants' motions to dismiss count ten, breach of fiduciary duty, without prejudice to plaintiff's filing an amended complaint alleging sufficient facts to indicate that a unique degree of trust and confidence existed between plaintiff and defendants which created a fiduciary relationship. <u>Id</u>. at 150.

On August 1, 2003, plaintiff filed a second amended ten-count complaint, alleging additional facts to support her respondeat superior claim (Count Seven) and her breach of fiduciary duty claim (Count Ten). On October 31, 2003, St. Columba Church filed its motion to dismiss Counts Seven and Ten of the amended complaint and, on November 21, 2003, Norwich Roman Catholic Diocesan Corporation filed its motion

to dismiss Counts Seven and Ten of the amended complaint, adopting all the arguments asserted by St. Columba Church.

As an initial matter, plaintiff argues that defendants' motions to dismiss should be denied as untimely because they were due on August 11, 2003. Furthermore, plaintiff contends that defendants did not seek any extensions of time or relief under Rule 6(b)(2). (Pl.'s Mem. at 5-7). Defendants counter that the motions are timely and rely on the ninety-day period in which to file motions to dismiss contained in the Standing Order On Scheduling in Civil Cases as set forth in the Local Civil Rules for the District of Connecticut.

This court will first address the timeliness of defendants' motions to dismiss. Initially, a case is governed by the Standing Order On Scheduling in Civil Cases set forth in the Local Civil Rules for the District of Connecticut. See D.Conn. L. Civ. R. 26(e)(2). However, after the parties confer for the purposes of Fed. R. Civ. P. 26(f), file a 26(f) report and the court issues a written scheduling order pursuant to Fed. R. Civ. P. 16(b), the deadlines set therein become operative. See D.Conn. L. Civ. R. 26(e). In this case, the parties filed the 26(f) Report on February 4, 2003 and the court endorsed the deadlines set therein on February 20, 2003. (Doc. #21). As stated earlier, on June 26, 2003, the court granted defendants' motions to dismiss counts seven and ten without prejudice to plaintiff's filing an amended complaint. See Doe, 268 F.Supp.2d at 143, 150. Accordingly,

3

plaintiff filed an amended complaint on August 1, 2003, and a response was due within 10 days. See Fed. R. Civ. P. 15(a). Therefore, the court concludes that defendants' motions to dismiss were not timely filed.

While, this court does not countenance the neglect of deadlines nor the failure to proceed under the applicable rules of civil procedure, in the interests of justice and judicial economy, the court will consider defendants' motions to dismiss.

## II. Standard of Review

In deciding a motion to dismiss, the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. See Easton v. Sundram, 947 F.2d 1011, 1014-15 (2d Cir. 1991), *cert. denied*, 504 U.S. 911 (1992). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957)(footnote omitted). The issue on a motion to dismiss "is not whether the plaintiff will prevail, but whether he is entitled to offer evidence to support his claims." United States v. Yale New Haven Hosp., 727 F. Supp. 784, 786 (D. Conn. 1990) (citation omitted).

## III. Discussion

A. Respondeat Superior

Defendants argue that the claim fails as a matter of law

because Sullivan's sexually abusive conduct is beyond the scope of his employment as a priest and is not in furtherance of the Church's business. (Def.'s Mem. at 3). Plaintiff counters that the allegations in her second amended complaint are sufficient to withstand defendants' motions to dismiss. Specifically, plaintiff alleges that Sullivan's acts were within the scope of his employment because his acts were committed during counseling sessions in attempt to bring plaintiff closer to the Church and her religious faith, thereby increasing financial donations to the Church and volunteer time spent by plaintiff and her family, as well as their overall commitment to the Church and Diocese. (Pl.'s Mem. at 13).

In order for an employer to be liable for the intentional torts of its employee under respondeat superior, the employee must have been acting "in furtherance of the employer's business." A-G Foods Inc. v. Pepperidge Farm, Inc., 216 Conn. 200, 208, 579 A.2d 69 (1990). Usually, "it is a question of fact as to whether a wilful tort of the servant has occurred within the scope of the servant's employment and was done to further his master's business.... But there are occasional cases where a servant's digression from duty is so clear-cut that the disposition of the case becomes a matter of law." Id. at 207, 579 A.2d 69 (internal citations omitted).

"That the servant disobeyed the orders of the master is

never a sufficient defense. It must be shown further that he ceased to act for the master and in the course of his employment." Son v. Hartford Ice Cream Co., 102 Conn. 696, 701, 129 A. 778 (1925) (citation omitted); see also Pelletier v. Bilbiles, 154 Conn. 544, 548, 227 A.2d 251 (1967). When an employee deviates from an employer's instructions, liability turns on the extent of the deviation, in light of the totality of the circumstances, which is generally a question of fact for the jury. Garriepy v. Ballou & Nagle, Inc., 114 Conn. 46, 51, 157 A. 535 (1931).

Cases of sexual abuse often represent such a strong deviation from furthering an employer's business. In many cases of alleged sexual abuse by priests, the courts have held that respondeat superior is not applicable to hold a church or diocese liable, because such acts by the priests are not in furtherance of the church's business. See Nutt v. Norwich Roman Catholic Diocese, 921 F.Supp. 66, 71 (D.Conn.1995); Dumais v. Hartford Roman Catholic Diocese, No. X07CV010077631S, 2002 WL 31015708, at *1 (Conn.Super. July 31, 2002); Doe v. Hartford Roman Catholic Diocesan Corp., 45 Conn.Supp. 388, 395, 716 A.2d 960 (Conn.Super.Ct.1998).

Plaintiff urges us to deny the motion because respondeat superior has been applied in some cases of sexual abuse by priests, and that those cases involved similar circumstances to the present case. See Martinelli v. Bridgeport Roman Catholic Diocesan Corp., 989 F.Supp. 110, 118 (D.Conn.1997),

6

*aff'd in part and rev'd in part on other grounds after trial*, 196 F.3d 409 (2d Cir.1999); Mullen v. Horton, 46 Conn.App. 759, 765-766, 700 A.2d 1377 (1997).

In Martinelli, the plaintiff claimed that a priest attempted to teach the sacraments to him and other teenage boys by using sexual contact. Martinelli, 989 F.Supp. at 118. The district court denied summary judgment for the diocese, because there was a genuine dispute as to whether the priest's activities represented a "total departure from the [d]iocese's business." Id.

In Mullen, the plaintiff alleged that her priest, a trained psychologist to whom she had gone for counseling, was involved in a sexual relationship with her. Mullen, 46 Conn.App. at 762, 700 A.2d 1379. In that case, because of the priest's vow of poverty, all of the profits from the priest's counseling business went to the church. Id. at 761, 700 A.2d 1379. In addition, the plaintiff had specifically sought counseling from this priest because of his "joint status as a psychologist and a Roman Catholic priest." Id. The court found that the monetary benefit to the Church and other factors suggested that a trier of fact could reasonably determine that the sexual relationship stemmed from the priest's church-sanctioned counseling position, and thus might not have been an abandonment of Church business. Id. at 765-66, 700 A.2d 1377.

The present case is controlled by the holding in Mullen.

7

Here, Sullivan allegedly assaulted plaintiff during counseling sessions in attempt to bring plaintiff closer to the Church and her religious faith, thereby increasing financial donations to the Church and volunteer time spent by plaintiff and her family in furtherance of the Church's business. Accordingly, the court finds that the acts as alleged, however misguided, are not so clearly outside the Sullivan's scope of employment that the question is one of law. Therefore, the court denies defendants' motions to dismiss count seven.

B. Fiduciary Duty

As to the tenth count alleging breach of fiduciary duty, St. Columba Church contends that plaintiff has failed to sufficiently allege that a close relationship existed between plaintiff and Sullivan and that the Church knew of it. (Def.'s Mem. at 6-8).

Under Connecticut law, a fiduciary relationship is "characterized by a unique degree of trust and confidence between the parties, one of whom has a superior knowledge, skill or expertise and is under a duty to represent the interests of the other." Dunham v. Dunham, 204 Conn. 303, 322, 528 A.2d 1123 (1987). The Connecticut Supreme Court has "refused to define a fiduciary relationship in precise detail and in such a manner as to exclude new situations, choosing instead to leave the bars down for situations in which there is a justifiable trust confided on one side and a resulting

8

superiority and influence on the other." Alaimo v. Royer, 188 Conn. 36, 41, 448 A.2d 207 (1982) (internal quotation marks and citations omitted). Accordingly, Connecticut courts have not articulated clear guidelines for determining whether a fiduciary relationship exists between a parishioner and a priest or diocese.

The leading authority on this issue is the Second Circuit's determination that it is possible for a jury to find a fiduciary relationship between a diocese and a parishioner who had been abused by a priest. Martinelli, 196 F.3d at 429. In that case, the diocese was connected to parishioner, Martinelli, in numerous ways. For example, the diocese ran the high school that Martinelli attended, knew that Martinelli participated with a group of boys in sessions with Father Brett who acted as a mentor and spiritual advisor, encouraged Brett to work with the youth of the church, and received reports from other victims whom Brett had abused. Id. at 429-30. The court determined that through Martinelli's involvement in "particular activities ..., including those which the [d]iocese sponsored, [he] had a particularly close relationship with the [d]iocese from which a fiduciary duty might arise," and because the diocese had received information about Brett's misconduct, a jury could have determined that the diocese had breached that duty. Id.

Accepting all of plaintiff's factual allegations as true as the court must when considering a motion to dismiss,

plaintiff has alleged sufficient facts to indicate a unique situation that supports a fiduciary duty claim. Here, plaintiff was a member of such church or diocesan sponsored activities as the Catholic Youth Organization ("CYO") and the church choir, and consulted with Sullivan for spiritual and religious counseling, as encouraged by defendants. Additionally, Sullivan attended dinners at the plaintiff's family home and vacationed with them in Rhode Island. Plaintiff alleges that defendants encouraged Sullivan to involve himself in the choir and CYO classes, as well as to have interaction with church members. (Tenth Count ¶¶ 13-18). Furthermore, plaintiff alleges that defendants knew or should have known that Sullivan engaged in a sexual relationship with another woman prior to his assignment to St. Columba Church. (Tenth Count ¶ 19). Accordingly, the court denies defendants' motions to dismiss Count Ten.

## IV. Conclusion

In conclusion, the court **denies** defendants' Motions to Dismiss (**Docs. #46 & #49**) the seventh and tenth counts of plaintiff second amended complaint filed on August 1, 2003.

**SO ORDERED.**

Date: February 17, 2004
     Waterbury, Connecticut.

                                           /s/
                                     _____
                                     GERARD L. GOETTEL,
                                     United States District Judge